# IN THE COURT OF APPEALS OF TENNESSEE,
## AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **STEPHEN EARL CRABTREE**, | ) | Davidson County Circuit Court |
|  | ) | No. 96D-2149 |
| Plaintiff/Counter-Defendant/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9710-CV-00576 |
|  | ) |  |
| **NANCY CHOPPIN CRABTREE**, | ) |  |
|  | ) |  |
| Defendant/Counter-Plaintiff/Appellee. | ) |  |
|  | ) |  |

**FILED**

**July 10, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

From the Circuit Court of Davidson County at Nashville.
**Honorable Muriel Robinson, Judge**


**Michael W. Binkley**, Nashville, Tennessee.
Attorney for Plaintiff/Counter-Defendant/Appellant.


**Edward M. Yarbrough**,
HOLLINS, WAGSTER & YARBROUGH, P.C., Nashville, Tennessee.
Attorney for Defendant/Counter-Plaintiff/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.**: (Concurs)

The parties to this divorce case, Stephen Earl Crabtree (Husband) and Nancy Choppin Crabtree (Wife), were married for approximately 23 years. The trial court entered a final decree of divorce in July 1997. Husband has appealed from the decree, citing error in the trial court's decision to award alimony *in futuro* and attorney's fees to Wife. Wife has raised an additional issue regarding child support. Upon review of the record, we affirm as to the awards of alimony *in futuro* and attorney's fees to Wife and find it necessary to remand this cause to the trial court regarding the award of child support. We set forth our reasons below.

The parties married in August 1974 when Husband was 21 years old and Wife 20. Two children were born of the marriage: Elizabeth Lee, born October 24, 1978 and Jennifer Lynn, born August 26, 1981. Lee, an adult at the time of trial, is a student at Georgetown University. Lynn was 16 years old at the time of trial and a student at Harpeth Hall, a private school for girls in Nashville. Husband agreed at trial to continue paying the tuition expenses of his minor daughter until graduation, although this was not made part of the final decree.

Husband is a college graduate with a degree in business administration. He has worked as a stockbroker for J. C. Bradford and Company the past fourteen years and became a partner in 1992. His earnings with the company are derived from commissions and partnership distributions. His total annual earnings for years 1991 - 1996 were $230,943, $387,073, $353,225, $254,437, $400,864 and $417,034, respectively. Husband indicated a net monthly income of $13,582.71, including his partnership distribution, which he receives in a lump sum amount each January following the year in which it is earned. Wife is a certified public accountant. After receiving her accounting degree in 1975, she began working with the accounting firm of Ernst and Whinney. She left there in 1977 after the couple's decision to begin a family. She did continue her accounting practice, working out of the marital home. Her annual gross earnings in 1996 were $41,200 based on a 30 hour work week servicing approximately 100 clients and six or seven audit clients.

Husband filed for divorce in July 1996 alleging irreconcilable differences and seeking joint custody of the children. He later amended his complaint to allege inappropriate marital conduct as a ground for divorce. In January 1997, he filed a motion for default judgment asserting that Wife

had failed to respond to his complaint and amended complaint. In February, Wife answered the complaint and filed a counterclaim for divorce alleging inappropriate marital conduct, adultery and irreconcilable differences. She sought sole custody of the minor child, child support, alimony and attorney's fees. Husband's answer admits adultery.

The final decree awards the divorce to Wife on grounds of inappropriate marital conduct. Husband's complaint insofar as the granting of the divorce was dismissed. The parties were awarded joint custody of the minor child with Wife receiving primary physical custody. Husband was ordered to pay child support in the amount of $1,312 per month. Wife was awarded the marital residence, with a determined equity of $145,223, "subject to the refinancing of the mortgages done thereon recently."[1] Wife was awarded additional marital property totaling approximately $228,000. Husband was awarded marital property totaling approximately $465,000. Husband was ordered to pay Wife rehabilitative alimony in the amount of $1,700 per month for five years and thereafter alimony *in futuro* in the amount of $1,200 per month until her death or remarriage. The decree recognizes the parties' tax liability for 1996 in the amount of $40,198 of which the court ordered Husband to pay two-thirds and Wife the remaining one-third. Finally, the court ordered Husband to pay $7,500 of Wife's attorney's fees as additional alimony.

Husband filed a motion to alter or amend the decree to hold Wife responsible for the parties' joint Visa credit card debt, which the court failed to address, and to eliminate the award of alimony *in futuro* to Wife and award Wife rehabilitative alimony only in the amount of $2,000 per month for a period of three to five years. The court held Wife responsible for $13,622.23 of the Visa debt, which totaled approximately $15,000,[2] but declined to alter the award of alimony.

Husband raises the following issues on appeal:

---

[1]The record indicates that the marital residence was valued at approximately $395,000. At the time of trial, the parties' mortgage on the marital home consisted of a balloon note due in 1999 in an amount over $200,000. At trial, the court indicated that its decision to award Wife the marital residence was conditional upon refinancing of the present mortgage to a conventional type mortgage so as to fit within the financial means of Wife. The record further reflects that the debt (in the approximate amount of $255,000) was refinanced with Wife obtaining a 30 year conventional mortgage with monthly payments of $2,280.

[2]The record indicates that the only marital debt of the parties consisted of the mortgage on the marital residence, the Visa debt and the parties' tax liability.

I. Whether the trial court abused its discretion in ordering alimony ***in futuro*** under the facts of this case.

II. Whether the trial court abused its discretion in ordering the husband to pay Wife's attorney's fees in the amount of $7,500 where Wife's actions prolonged the litigation, where the wife has a significant earning capacity, and where the wife received $70,000 in liquid assets in the property division.

Wife raises the following additional issues:

I. Whether the amount of child support set by the trial court is in compliance with the child support guidelines promulgated by the Department of Human Services pursuant to Section 36-5-101(E)(2) ***Tenn. Code Ann***.

II. Whether the court of appeals should award Nancy Choppin Crabtree her attorney's fees incurred on appeal.

We first address whether it was error for the trial court to award alimony ***in futuro*** to Wife. Husband asserts that this was error where the facts establish that Wife is healthy, 43 years old and a certified public accountant earning over $40,000 on a part-time basis. He maintains that Wife is capable of earning, at a minimum, $60,000 to $70,000 annually if she would accept more clients and work full-time. He testified that he had several clients who have the same skills as Wife who earn more money. He stated, "[s]he's got a very large tax base and she takes a lot of time off. . . . She has turned down business over the last few years, so I think she is capable of earning more." Husband further contends that Wife undercharges her present clients and submits that she could possibly earn in excess of $100,000 a year if working on a full-time basis and charging market rates.

Husband notes the public policy in this state favoring "economic rehabilitation of the disadvantaged spouse following divorce." He correctly cites ***Self v. Self***, 861 S.W.2d 360 (Tenn. 1993) for the following proposition:

[T.C.A. § 36-5-101(d)] reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long

term support is necessary.

*Self*, 861 S.W.2d at 361. Husband believes Wife's "financial rehabilitation is both feasible and virtually certain."

Husband also contends that the trial court's award discourages Wife from achieving full rehabilitation and disregards the legislature's preference for short-term temporary support. He insists that Wife's full economic rehabilitation is feasible in a three year period and that an award of alimony for this length of time is appropriate under the facts. Although Husband recognizes the disparity in the parties' actual earnings, he insists that the disparity is not so great with respect to their earning capacities. Wife counters that Husband's present income is more than twelve times that of hers; that although Husband agreed at trial to continue paying the educational expenses of the minor child, he is presently under no court order to do so; that since she was awarded the marital residence and accompanying indebtedness, the assets distributed to Husband are more liquid in nature, and, finally, that she is still responsible for maintaining the marital residence for the benefit of the parties' minor daughter.

It is well established that the trial court has broad discretion in deciding whether to award alimony. The decision is factually driven and requires a balancing of those factors listed in T.C.A. § 36-5-101(d). The most significant factors are need and the ability to pay. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993). Wife requested alimony in the amount of $7,000 per month based on a need of $9,000 per month. Of that figure, $1,000 was designated as school expenses for the minor child. Wife argues that her needs will be $6,500 per month after this child leaves for college. Wife also listed a monthly mortgage payment of $3,070 which, as heretofore indicated, has been reduced to $2,280 through refinancing. Husband identified monthly expenses of approximately $15,700 on his income and expense statement. His brief indicates that after modifications are made thereto as a result of the divorce decree, his monthly expenses are approximately $9,500. The record reflects that for the past two years Husband's net monthly income has been approximately $20,000. Husband admitted at trial that his estimated net monthly income of $13,582.71 is "contrary to the last several years." Clearly, Husband's ability to pay is not in question.

Although we believe Husband correct in his position that disparity in actual income is insufficient, in and of itself, to overcome the legislative preference for rehabilitation, we find the facts under the present case to support the trial court's award of alimony, both rehabilitative and *in futuro*. Even if accepting Husband's assertion as true that Wife can earn in excess of $100,000 per year if working full-time and charging market rates, Husband's income and earning capacity still greatly exceeds that of Wife. The award of rehabilitative alimony will assist Wife in realizing her full economic potential; however, it will not place her anywhere near an equal footing with Husband nor will she be able to continue living in the manner in which she had become accustomed during this twenty-three year marriage. The award of alimony *in futuro* will further assist her in this regard and provide her with "closing in" money. *See Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995).

We recognize that the facts in *Aaron* are somewhat different than our own in that there the wife was a homemaker, had never worked outside the home and did not possess a college degree. *Aaron*, 909 S.W.2d at 411. We nonetheless agree with *Aaron*, that "[w]hile alimony is not intended to provide a former spouse with relative financial ease, . . . alimony should be awarded in such a way that the spouses approach equity." *Id*. In finding an award of alimony *in futuro* to the wife appropriate, the *Aaron* court stated, "[w]hile this will not put her in the same position she was prior to the divorce, it will provide her with 'closing in' money; that is, she will be enabled to more closely approach her former economic position." *Id*. *Aaron* also noted that the party obtaining the divorce should not be left in a worse financial situation than he or she had before the opposite party's misconduct brought about the divorce. *Id*. at 410-11. Consequently, we affirm the trial court's award of alimony to Wife.

We next address whether the trial court erred in awarding Wife a portion of her attorney's fees which the record indicates exceed $12,000. Husband maintains that the trial court erred in awarding Wife $7,500 of this amount since she was awarded approximately $70,000 in liquid assets, her actions prolonged the litigation and she is capable of earning a substantial salary. Husband argues that Wife failed to answer written discovery, to produce certain documents for several months and also initially failed to respond to the complaint for the divorce necessitating a motion for default judgment. He further asserts that her requests during settlement negotiations were unreasonable. The record, however, indicates that the trial court found "[b]oth of these parties [to

be] totally unreasonable" in terms of settlement. We infer from the trial court's award that the court did not find Wife's actions regarding the legal proceedings below to have constituted an intentional failure on her part to cooperate and that litigious tactics were not employed. We concur in this finding. The trial court is afforded wide discretion in determining whether one spouse should pay for the other's legal expenses incurred as a result of divorce litigation. *Loyd*, 860 S.W.2d at 413. Based on the record before us, including the financial circumstances of the parties, we conclude that the trial court was correct in awarding Wife these fees.

Wife raises the issue of whether the trial court erred in its award of child support. She asserts that the award fails to comply with the child support guidelines and that the trial court failed to make any written finding regarding deviation. T.C.A. § 36-5-101(e)(1) provides as follows:

> In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance form the guidelines.

The trial court ordered Husband to pay $1,312 per month in child support. The record does not indicate that the trial court made any written finding regarding its deviation from the child support guidelines which we think exists considering the amount of Husband's net monthly income as reflected in the record. Husband asserts that his child support obligation under the guidelines is $2,268 monthly based on an actual net monthly income of $10,800. He contends that the trial court awarded only $1,312 in child support because at trial he voluntarily assumed the obligation of the minor child's educational expenses which amount to over $1,000 per month. Thus, Husband contends that his total child support obligation is above the guidelines.

The parties agree that the final decree does not require Husband to pay the minor

child's educational expenses.[3]  We therefore believe it necessary to remand this cause to the trial court with the instruction to either apply the child support guidelines or to make written findings regarding any deviation therefrom.  In its discretion, the trial court may amend the final decree to include the specific requirement that Husband provide for his minor child's educational expenses.

Wife has requested an award of her attorney's fees incurred in this appeal.  We believe she is entitled to such an award and therefore remand this cause to the trial court to additionally determine the amount of attorney's fees reasonably incurred by Wife on this appeal and to make an appropriate award.

The judgment of the trial court is affirmed as to the awards of alimony and attorney's fees.  This cause is remanded to the trial court for further consideration of the child support award with the instruction that the child support guidelines be applied or that written findings be made regarding any deviation.  The court is additionally instructed to make an award of attorney's fees to Wife that were reasonably incurred in this appeal.  Costs are assessed against Husband, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
LILLARD, J. (Concurs)

---

[3]Husband states in his brief that he was willing to make the child's private school tuition a part of the decree but that Wife did not insist upon such. Husband's counsel, in opening statement, informed the court as follows:

> [Husband] has offered and will make a part of this decree that he continue to pay for his youngest daughter's Harpeth Hall tuition expenses each year.  His child support will be $1,312 under the guidelines and then with the tuition expense that he will guarantee to be bound by that is well above the guidelines.

Based on the record, we question the accuracy of counsel's proposed application of the guidelines.