**IN THE COURT OF APPEALS OF TENNESSEE**
**AT JACKSON**

FILED

December 28, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **CAROLYN ELROD VATTER,** | ) | |
| | ) | |
| Plaintiff/Counter-Defendant | ) | Shelby Circuit No. 150777-9 R.D. |
| Appellee, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROBERT L. VATTER,** | ) | Appeal No. 02A01-9707-CV-00141 |
| | ) | |
| Defendant/Counter-Plaintiff | ) | |
| Appellant, | ) | |

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE ROBERT L. CHILDERS, JUDGE


For the Plaintiff/Counter-Defendant        For the Defendant/Counter-Plaintiff
Appellee:                                   Appellant:

Stuart B. Breakstone                        William G. Hardwick, II
Memphis, Tennessee                          Memphis, Tennessee



**AFFIRMED**


HOLLY KIRBY LILLARD, J.


CONCURS:


W. FRANK CRAWFORD, P.J., W.S.


HEWITT P. TOMLIN, JR., SR.J.

**OPINION**

This is a divorce case. The trial court ordered the husband to pay the wife rehabilitative alimony, alimony *in futuro* beginning at a future date, and alimony *in solido*. The trial court also found a partnership interest to be the husband's separate property. Both parties appeal. We affirm.

Appellant Robert J. Vatter ("Husband") and Appellee Carolyn E. Vatter ("Wife") were married in 1988. Husband had been married previously and Husband and his previous wife owned a ten percent interest in a partnership known as the Clay Road Partnership ("Partnership"). The Partnership rents office and warehouse facilities to a construction company. During the marriage of Husband and Wife, the parties purchased Husband's previous wife's interest in the Partnership with marital funds. During the marriage, Husband worked for Mapco Petroleum, first as a contractor and later as an employee earning approximately $5,400 per month. Wife worked first as a secretary and later as a real estate agent earning approximately $17,000 per year. In 1995, Wife filed for divorce. The divorce trial was held in 1997.

At trial, Wife sought permanent alimony. She testified that during the marriage she became chronically ill and that it greatly affected her ability to work as a real estate agent. She presented testimony from Kathy Chapman, M.D., a rheumatologist, to support her claim of decreased earning capacity. Dr. Chapman testified that Wife suffered from fibromyalgia, also sometimes termed chronic fatigue syndrome, and depression. She testified that these conditions would affect Wife's ability to work and that it was likely there would be only a limited improvement over time, that the condition was considered chronic.

Husband testified that Wife had no involvement in the operation of the Partnership, and that his ex-wife's interest was purchased during Husband and Wife's marriage with "our joint money." He indicated that the Partnership interest generates income of approximately $432 per month. He testified that most of the parties' finances were kept separate during the marriage. He presented no proof contradicting Wife's evidence on her physical condition.

Based on the parties' agreement, the trial court declared the parties divorced under Tennessee Code Annotated § 36-1-129(b). This statute authorized the trial court to declare the parties divorced rather than granting a divorce to one party.

The trial court found that Wife suffered from depression. The trial court recognized that there was a possibility that Wife also suffered from fibromylagia, but found that Wife had not carried her burden of proving this illness. It noted that Wife had been unsuccessful as a real estate agent and

observed that Wife would likely have to go into another line of work. The trial court then ordered Husband to pay rehabilitative alimony of $1,500 per month for five years, in order to permit Wife to obtain treatment for her depression and go into a line of work other than real estate. The trial court also ordered Husband to pay alimony *in futuro* in the amount of $200 per month, beginning at the end of the five-year period of rehabilitative alimony. It also ordered Husband to pay $4,000 toward Wife's attorney's fee, as alimony *in solido*. It ordered Husband to maintain a life insurance policy in the amount of $250,000 to ensure his alimony payments to Wife.

The trial court also found that the Partnership was Husband's separate property. In its oral ruling, the trial court stated that Wife "probably does have some interest in that Clay Road Partnership but the Court, based on the evidence in this case, is frankly, unable to determine what that value is or what the interest is."

Husband now appeals the trial court's award of alimony. Wife appeals the trial court's finding that the Partnership is Husband's separate property.

We review the trial court's findings of fact in this case *de novo* with the presumption that the trial court's findings of fact are correct, unless the factual findings are against the preponderance of the evidence. Tenn. R. App. P. 13(d).

On appeal, Husband asserts that the trial court's finding that Wife suffered from depression was based on speculation and conjecture, and that the trial court erred in basing an award of alimony on this finding. After reviewing the record, we find that the evidence was sufficient to support the trial court's finding and does not preponderate against it. Wife presented sufficient expert testimony and Husband offered no countervailing evidence. Therefore, the trial court's factual finding that Wife suffers from depression that interferes with her ability to work is affirmed.

Husband next alleges that the trial court erred in awarding rehabilitative alimony and alimony *in futuro*, along with life insurance coverage to insure payment of the alimony obligation. Husband argues that permanent alimony should be awarded only in circumstances where the recipient spouse cannot be economically rehabilitated, and that it is error to award rehabilitative alimony *and* permanent alimony.

2

Tennessee statutes provide for three types of alimony: (1) rehabilitative alimony, which is temporary support to enable the former spouse to obtain the ability to support himself or herself at an appropriate level, (2) periodic alimony or alimony *in futuro*, which is a permanent support obligation to an economically disadvantaged former spouse, and (3) alimony *in solido*, which is a lump sum payment. *See* Tenn. Code Ann. § 36-5-101(d)(1) (Supp. 1998). A number of factors are considered to determine the appropriate amount of spousal support:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L) (Supp. 1998). This statute reflects a legislative policy in favor of rehabilitative alimony as a way to encourage the independence and self-sufficiency of the former spouse:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3).

Tenn. Code Ann. § 36-5-101(d)(1) (1996); *see Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993)

("[L]ong-term support and maintenance is appropriate only where there is relative economic disadvantage and rehabilitation of the disadvantaged party is not feasible.").

A trial court may modify both rehabilitative alimony and alimony *in futuro* during the periods the payments are in effect. Tennessee Code Annotated § 36-5-101(d)(2) provides that

> [a]n award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

Tenn. Code Ann. § 36-5-101(d)(2) (Supp. 1998).

Both rehabilitative alimony and alimony *in futuro* remain subject to the control of the trial court:

> If a dependent spouse does not satisfactorily strive for self sufficiency, the Court may withdraw part or all of the support allocated to finance rehabilitation. If the dependant spouse demonstrates complete inability to achieve even partial self sufficiency, the Court may grant alimony *in futuro* to provide for the needs of the dependent spouse.
>
> If the dependent spouse achieves partial self sufficiency but demonstrates inability to achieve total self sufficiency, the Court may grant sufficient alimony *in futuro* to supplement the earning capacity of the dependent spouse.

*Loria v. Loria*, No. 01A01-9609-CH-00441, 1997 WL 107170, at *2-3 (Tenn. App. Mar. 12, 1997); *see also Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993); *Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993).

Husband argues that it was improper for the trial court to order both rehabilitative alimony and alimony *in futuro* in this case. We find no statutory or common law prohibition against an award of permanent and rehabilitative alimony in the same case. The trial court has the discretion to set the alimony award in a particular case, and the award will not be modified on appeal unless the appellant can show an abuse of that discretion. *See Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. App. 1986).

An award of both rehabilitative and permanent alimony was affirmed in *Hanover v. Hanover*, 775 S.W.2d 612 (Tenn. App. 1989). In *Hanover,* the trial court had applied the factors in Tennessee Code Annotated § 36-5-101(d). *Id.* at 617. The court found that it was unlikely that

4

the former spouse could rehabilitate herself sufficiently to live in the manner to which she was accustomed during the marriage.

In this case, the trial court's award of permanent alimony after a period of rehabilitative alimony was based on the finding that Wife's prospects for rehabilitation were limited because of her depression, past employment history, and the possibility of fibromylalgia. As in *Hanover*, the trial court in this case applied the factors set out in Tennessee Code Annotated § 36-5-101(d). After the period of rehabilitative alimony ends, and the trial court can see the extent to which Wife has rehabilitated herself, the trial court may decide to modify or eliminate the award at that time. The evidence does not preponderate against the trial court's factual findings, and we find no abuse of discretion in the trial court's decision to award alimony *in futuro* at the end of the rehabilitative period.

Husband argues that the trial court erred in awarding any rehabilitative alimony at all. He argues that Wife has already obtained means of supporting herself, earning approximately $17,000 per year as a real estate agent. Consequently, she has no need for five years of rehabilitative alimony.

However, rehabilitative alimony may be awarded for reasons other than to permit a financially disadvantaged former spouse to obtain job skills. "While rehabilitative alimony may be particularly appropriate when evidence shows that the disadvantaged spouse can become economically sufficient by further education or job skills training, the award of rehabilitative alimony is not limited to those specific circumstances." *Quarry v. Quarry*, 1992 WL 141796, at * 4 (Tenn. App. June 25, 1992). In this case, the trial court found that the award of rehabilitative alimony was supported by the following factors:

> (1) the relative education and training of each party; (2) the ability and opportunity of each party to secure such education and training to improve that party's earning capacity to a reasonable level; (3) the fact that Wife suffers from depression and demonstrated a need for treatment for this problem; (4) the fact that Wife has not been successful in real estate and will probably need to go into another line of work in order to adequately support herself; (5) Wife's monthly expenses outweigh her current income by close to $800.00; (6) the standard of living the parties established during the marriage; and (7) the extent to which each party has made tangible and intangible to the marriage as monetary and homemaker contributions.

The trial court also considered the fault of the parties in causing the dissolution of the marriage. After reviewing the record, we conclude that the evidence does not preponderate against the trial court's award of rehabilitative alimony to Wife in the amount of $1,500 per month for a period of

5

five years. The decision of the trial court on this issue is affirmed.

Husband also argues that the trial court erred in awarding $4,000 in attorney fees as alimony *in solido*. Husband argues that such an award is not proper where the former spouse receives a portion of the marital estate. In this case, Wife was awarded marital assets valued at $141,785. Husband contends that this award provides Wife with sufficient funds to pay her attorney and the $4,000 for attorney's fees award was error. However, most of the assets awarded to Wife were non-liquid assets. Moreover, in determining whether to award attorney's fees, the trial court must consider the factors listed in Tennessee Code Annotated §36-5-101(d) and quoted above. *See Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. App. 1992); *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. App. 1980). An award of attorney's fees is within the sound discretion of the trial court and will not be disturbed on appeal unless there is a showing of abuse. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. App. 1988). We find no abuse of discretion in the award of attorney's fees. The decision of the trial court is affirmed on this issue.

Wife raises one issue on appeal, the trial court's determination that the entire interest in the Partnership was Husband's separate property. While Husband was married to his first wife, they purchased an interest in the Partnership. This interest was divided between Husband and his prior wife at their divorce. At the time of the marriage between Husband and Wife, Husband owned an approximate 5% interest in the Partnership. During the marriage, Husband purchased the ex-wife's interest, another approximately 5% interest. Husband acknowledged that this interest was purchased with Husband and Wife's "joint funds."

Tennessee Code Annotated § 36-4-121 grants the trial court the power to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121 (1996). Therefore, the trial court wide has discretion to adjudicate the rights of the parties in all jointly owned property. *Wallace v. Wallace*, 733 S.W.2d 102, 106 (Tenn. App. 1987).

In this case, the trial court reviewed all of the assets at issue, including the marital home and the Partnership interest, which generates approximately $432 per month in income. After reviewing the evidence, the trial court's award to Husband included the interest in the Partnership and the concomitant income of $432 per month, and the award to Wife included the marital home, rehabilitative alimony and thereafter alimony *in futuro* of $200 per month. It should be noted that

6

counsel for Wife, in his closing statement at trial, referred to the Partnership interest and state, "we say let him keep that because that will go to help him pay my client alimony. . . ." While the trial court awarded considerably less permanent alimony than requeasted by Wife, in reviewing the overall division of marital property, we cannot say that the evidence preponderates against the trial court's decision on the Partnership interest. The trial court is affirmed on this issue.

Wife also requests attorney's fees incurred in this appeal. Both parties on appeal have prevailed on some issues and not on others. Under the circumstances as a whole, we deny the request for attorney's fees incurred in this appeal.

In sum, the trial court's awards of rehabilitative alimony, alimony *in futuro* and alimony *in solido* are affirmed. The finding that the entire interest in the Partnership is Husband's separate property is affirmed. Wife's request for attorney's fees on appeal is denied.

The decision of the trial court is affirmed. Costs are assessed against both parties equally, for which execution may issue, if necessary.


                                                          _____

_____**HOLLY KIRBY LILLARD, J.**


**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**HEWITT P. TOMLIN, JR., SR.J.**

7